IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| LASERDYNAMICS, INC. | § | |
| | § | |
| Plaintiff | § | CIVIL ACTION NO.: 02-06CV-348 |
| v. | § | |
| | § | |
| ASUS COMPUTER INTERNATIONAL; | § | JURY TRIAL DEMANDED |
| QUANTA STORAGE AMERICA, INC.; | § | |
| QUANTA COMPUTER USA, INC.; | § | |
| ASUSTEK COMPUTER, INC.; | § | |
| QUANTA STORAGE, INC.; AND | § | |
| QUANTA COMPUTER, INC. | § | |
| | § | |
| Defendants | § | |

**PLAINTIFF LASERDYNAMICS INC.'S RESPONSE AND
OPPOSITION TO THE QUANTA DEFENDANTS' MOTION TO STAY**

Plaintiff, LaserDynamics, Inc. ("LaserDynamics") hereby responds to and opposes the Motion of the Quanta Defendants to stay this case pending reexamination of the '981 patent.

The Quanta Defendants offer no excuse or explanation for their delay in earlier seeking this relief during the *nineteen months* this case has been pending. Nor do the Quanta Defendants justify their withholding of those documents evidencing that they had sought reexamination some five months earlier, despite the fact that these documents were plainly due under the Court's Amended Discovery Order.

The Quanta Defendants' Motion is a transparent attempt to further protract the conduct of discovery and trial of this action. To this end, LaserDynamics has been compelled to file numerous motions to compel discovery unreasonably withheld by the Quanta Defendants relating to such basic information as the functionality of the accused devices and the bases for these Defendants' defense of non infringement. The Quanta Defendants' nondisclosure of their

ex parte application for reexamination is further indicative of their improper motives in the filing of their Motion.

Contrary to Defendants' representations to the Court, this case is not in the "early stages" of discovery. Over three hundred thousand pages of documents have been produced, extensive written discovery has been exchanged and depositions have been taken. Finally, though a claim construction has not been entered in this case, the parties' briefing pursuant to PR 4-5 is due on March 28, 2008.

The streamlining of issues promised to be achieved by a stay is both speculative and illusory. First, there is no indication when the PTO will complete the process. Further, the ex parte reexamination is not binding on either the Quanta or ASUS Defendants who would be free, once reexamination is completed, to urge the same and other arguments in litigation on the issue of validity. Thus, reexamination will in fact work to multiply -- not streamline -- the ultimate disposition on the issue of validity

Plainly, all factors in this case militate against the entry of a stay. The Quanta Defendants' Motion should be denied.

# I.
# BACKGROUND AND NATURE OF THE CASE

In a complaint filed on August 31, 2006, LaserDynamics charged QSA and QCA with infringement of U.S. Patent No. 5,587,981. LaserDynamics amended its complaint on September 14, 2007 to include both QSI and QCI.

Discovery in this case commenced on July 11, 2007 and closes on August 12, 2008. A pretrial conference is set for November 20, 2008. Extensive written discovery has been exchanged. Further, the parties have produced many hundreds of thousands of pages of documents. Depositions of both the Quanta and ASUS Defendants have been taken.

## II.
## THE QUANTA DEFENDANTS' APPLICATION FOR REEXAMINATION

The Quanta Defendants moved for ex parte reexamination on November 20, 2007 or almost fifteen (15) months after this case was originally filed. (Exhibit "B" to Chen Decl.) The PTO granting of the application for reexamination was mailed on February 15, 2008. (Exhibit "C" to Chen Decl.)

Until the filing of the instant Motion, Quanta Defendants had not produced any documents evidencing that they had sought reexamination of the '981 patent, or that reexamination had been granted by the U.S. PTO.

## III.
## ARGUMENT

### A. The Standard for a Stay of Proceeding

The district court has the inherent power to control its own docket, including the power to stay proceedings. *Landis v. N. Am. Co.,* 299 U.S. 248, 254, 81 L. Ed. 153, 57 S. Ct. 163 (1936); *Gould v. Control Laser Corp.,* 705 F.2d 1340, 1341 (Fed. Cir. 1983). How to best manage the Court's docket "calls for the exercise of judgment, which must weigh competing interests and maintain an even balance." *Landis,* 299 U.S. at 254-55. The Federal Circuit has recognized that there is no general rule requiring a district court to stay a case pending reexamination. *See Viskase Corp. v. Am. Nat'l Can Co.,* 261 F.3d 1316, 1328 (Fed. Cir. 2001).

In deciding whether to stay litigation pending reexamination, courts typically consider: (1) whether a stay will unduly prejudice or present a clear tactical disadvantage to the nonmoving party, (2) whether a stay will simplify the issues in question and trial of the case, and (3) whether discovery is complete and whether a trial date has been set. *Soverain Software LLC v. Amazon.com, Inc.,* 356 F. Supp. 2d 660, 662 (E.D. Tex. 2005); *Xerox Corp. v. 3Com Corp.* 69 F. Supp. 2d 404, 406 (W. D. N. Y. 1999).

3

**B.   The Quanta Defendants Have Not Met their Burden for the Entry of a Stay**

   1.   The Entry of a Stay is Improperly Sought to Promote a Tactical Advantage and Will Result in Prejudice to LaserDynamics.

In Defendants' combined statement submitted pursuant to PR 4-3, the Quanta Defendants (along with the ASUS Defendants) argued that a pre claim construction hearing was not necessary and that "[t]he Defendants do not believe ... there is any basis to delay the claim construction hearing". (PR 4-3 Statement at 3; Exhibit "A" to Luck Decl.) (emphasis added).[1] While the Quanta Defendants were arguing against an alleged delay of the *Markman* hearing for a prehearing conference to review their discovery misconduct, they had both requested reexamination of the '981 patent and in fact had received notice that the PTO had accepted their application. Further, the Quanta Defendants waited almost nineteen months after this case was filed to seek a stay of this case which is the precise relief they sought to prevent in their PR 4-3 statement, quoted above. This inconsistency is plainly indicative of Defendants' motive to protract any hearing on pending discovery motions which most probably will result in the Quanta Defendants being compelled to provide discovery that to date they have been unwilling to give. *See Soverain Software LLC v. Amazon.Com, Inc*, 356 F. Supp 2d 660, 662 (E.D. Tex. 2005)(finding inconsistent positions in opposing delay of trial, and yet seeking stay of all proceedings, indicative of improper tactical motives).

The entry of a stay will plainly serve to prejudice LaserDynamics. In this connection, postponing the trial of this action will prejudice LaserDynamics' ability to protect its property rights in the '981 patent against yet other infringers. Further, while LaserDynamics may or may not be able to seek permanent injunctive relief in this action, this does not militate toward the

---

[1] It should be noted that LaserDynamics ***did not*** seek a delay of the *Markman* hearing, but instead, and consistent with PR 4-3(e), noticed its desire for a prehearing conference *prior to* the *Markman* hearing.

4

entry of a stay. *See Biax Corporation v. Fujitsu Computer Systems Corp. et. al.*, Civil Action No. 2:06-CV-364 (denying stay despite fact that patentee not eligible for injunctive relief); *Texas MP3 Technologies, Ltd. v. Samsung Electronics Co., Ltd.*, Civil Action No. 2:07-CV-52 (denying stay despite Samsung claim that "monetary damages can adequately compensate for delay").

Further, the PTO has not provided any definitive guidance on the length of time required for the reexamination. Accordingly, the potential delay for an indefinite period would serve to also prejudice LaserDynamics. *See PureChoice, Inc. v. Honeywell Int'l, Inc.*, 2007 U.S. Dist. LEXIS 95706 (E.D. Tex. Apr. 20, 2007) (denying motion for stay even where discovery was not completed); *Visto Corp. v. Research in Motion Ltd.*, 2007 U.S. Dist. LEXIS 76134 (E.D. Tex. Sept. 28, 2007) (denying motion for a stay even very early in the proceedings); *Visto Corp. v. Good Tech., Inc.*, 2007 U.S. Dist. LEXIS 72234 (E.D. Tex. Sept. 27, 2007) (citing *Ricoh Co., Ltd. v. Aeroflex, Inc.*, 2006 U.S. Dist. LEXIS 93756, 2006 WL 3708069, *2 (N.D. Cal. Dec. 14, 2006); *Lexington Lasercomb I.P.A.G. v. GMR Products, Inc.*, 442 F. Supp. 2d 1277, 1278 (S.D. Fla. 2006)).

Finally, the Quanta Defendants' unilateral assessment of their limited damage exposure is nothing more than attorney rhetoric. Predictably, LaserDynamics possesses a markedly different opinion that this case is worth in excess of $200,000.00.[2] (Mtn. at 7). The Quanta Defendants' burden on their Motion can be met only by facts, not conjecture.

---

[2] The Quanta Defendants' unilateral assessment that the dollar value of this case is worth no more than $200,000.00 (Mtn. at 7) is unsupported and at odds with the outcome in prior litigation on the '981 patent. Revealingly, the Quanta Defendants' unilateral conclusion as to the existence of an "established royalty rate" is unsupported by evidence and has yet to be tested in discovery that they, to date, have refused to yield. Further, and while the Quanta Defendants have not been forthcoming in disclosing their sales volume for the accused DVD drives, publicly available information shows that beginning in 2006 Quanta sales to Dell <u>alone</u> number almost three hundred thousand of one type DVD drive (slim line drives) <u>per month</u>. (August 5, 2006 publication; Exhibit "B" to Luck Decl.) Thus, the scope of Quanta Defendants' infringement would appear to be much greater in scope than that seen in prior litigation on the '981 patent.

This factor weighs strongly against a stay.

### 2. A Stay Would Not Serve to Simplify Issues in this Case.

The Quanta Defendants' argument that a stay would serve to simplify the issues in this case by disposing of the issue of validity is pure conjecture. The '981 patent has been litigated on numerous occasions. In each prior case, as it is here, the '981 was subjected to defenses of invalidity. LaserDynamics strongly contests that reexamination will result in any narrowing, much less a cancellation, of any claims of the '981 patent.

The Quanta Defendants' allegation that "the asserted claim of '981 patent will likely be amended, removed or eliminated during reexamination" is again nothing more than hyperbole. (Mtn. at 10) If the Quanta Defendants were in fact confident in the ultimate amendment or cancellation of claim 3, they would have filed an *inter partes* request for reexamination, and thereby allowed LaserDynamics to participate in the process. However, they did not, instead filing an *ex parte* application and then keeping the every existence of the application secret. This conduct is hardly consistent with Defendants' bold rhetoric. This district has recognized that while a high proportion of reexamination requests are accepted by the PTO, a very low percentage of patents are ever canceled. *See Soverain*, 356 F. Supp 2d at 662 (recognizing that while 90 % of applications are granted, only 12% result in cancellation).

The district has also recognized the speculative nature of the reexamination process. In *Soverain*, the court was unwilling to grant a stay pending reexamination merely because some of the relevant claims "might" be affected. The court found that

> to do so would not promote the efficient and timely resolution of patent cases, but would invite parties to unilaterally derail timely patent case resolution by seeking reexamination. Some of the claims may change in this case, but the Court is of the opinion that the interests of justice will be better served by dealing with that contingency when and if it occurs, rather than putting this case

> indefinitely on hold. Firm trial settings resolve cases and reduce litigation costs.

*Soverain* 356 F. Supp. 2d at 662-63. . *See also, Texas MP3*(finding the result of reexamination too speculative to warrant a stay).

The Quanta Defendants argue that reexamination will result in a streamlining of the validity issue, implying that they will be estopped to raise new or different validity arguments in a trial on the merits. This is plainly not the case. <u>If</u> the Quanta Defendants had made an application for an *inter partes* reexamination, they would have been estopped from relitigating the same arguments made to the PTO pursuant to 35 U.S.C. § 315(c). Assuming that the ASUS Defendants had also joined in the reexamination process, which they also <u>did not</u>, an argument could have been made that since both sets of defendants were estopped from relitigating arguments made before the PTO, any resultant litigation on the validity issue would be foreshortened. As set forth above, however, the Quanta Defendants moved for *ex parte* reexamination which does not result in an estoppel. Thus, both the ASUS Defendants and Quanta Defendants would be perfectly free, when litigation resumes, to make new and different arguments concerning the validity of the '981 patent.

The pending reexamination proceeding also will not address other prior art references cited in this case by either the Quanta or ASUS defendants. Hence, when litigation resumes, both groups of defendants would also be free to pursue invalidity arguments on these references. It is clear, therefore, that reexamination will not result in a streamlining but will instead result in a potential multiplication of issues. *See Texas MP3 Technologies, Ltd v. Samsung Electronics Co., Ltd*, Civil Action No. 2:07-CV-52 (denying stay since "[b]ecause all of the defendants would not be estopped from rearguing the invalidity positions taken by Apple in the reexamination, it is unlikely that the issues of this case would be simplified by a stay.")

7

Plainly, the basic premise for Defendants' Motion -- that reexamination would in fact alter the claims of the '981 patent -- is rank speculation as evidenced by their decision not to file an *inter partes* application. What is not speculative is that the Quanta Defendants do not want this case to move to trial and have sought to delay trial by any means including, most recently, the instant Motion. This district has recognized this improper motivation as grounds to deny a stay. *See PureChoice, Inc. v. Honeywell International, Inc.*, Civil Action No. 2:06-CV-244 (finding request for reexamination was made in an effort to delay trial from going forward).

The Quanta Defendants rely on *Echostar Techs. Corp. v. TiVo, Inc.*, 2006 U.S. Dist. LEXIS 48431 (E.D. Tex. July 14, 2006) for the proposition that judicial economy favors granting a stay. The court in *Echostar*, however, based its analysis on the fact that, *inter alia*, the stay was sought pending an *inter partes* reexamination – and not an *ex parte* reexamination. The court offered the following explanation to support its reason for granting a stay:

> Unlike an *ex partes* reexamination, an *inter partes* reexamination allows the third-party requester to file written comments addressing issues raised by the action of the Office or the patent owner's response thereto. In addition, the third-party requester may appeal to the Patent Board of Appeals and may appeal from the Board's decision to the Federal Circuit if the Board affirms a finding of patentability or reverses an examiner's finding of unpatentability. Moreover, the third-party requester may participate as a party if the patent owner appeals to the court from an unfavorable decision regarding patentability.
>
> However, and of particular import here, the statute imposes estoppel restraints on a third-party requester. That is, a third-party requester is estopped from relitigating the same issue which the third-party requester raised or could have raised during the *inter partes* reexamination proceedings. . . . In addition, the third-party requester will be estopped from seeking review of factual determinations made in the *inter partes* reexamination.

*Echostar Techs. Corp. v. TiVo,* 2006 U.S. Dist. LEXIS 48431 at 8-9. (internal quotations and citations omitted).

As set forth above, the Quanta Defendants selectively sought an *ex parte* request for reexamination. Hence, their reliance on *Echostar,* which addresses the ability of the respondent to participate in the reexamination process, is inapposite and thus readily distinguishable.

Finally, this Court has already gained familiarity with the '981 patent as a result of the *LaserDynamics v. BenQ* litigation. Accordingly, waiting for the completion of reexamination may in a best case scenario only serve to simplify the case to a very limited degree. *See Biax Corporation v. Fujitsu Computer Systems Corp. et al.*, Civil Action No. 2:06-CV-364.

This factor also strongly militates in favor of denying the stay.

### 3. The Status of Discovery Also Militates in Favor of Denying a Stay.

The Quanta Defendants' disingenuously argue that a stay will conserve judicial resources (Mtn. at 9). If this was legitimately the case, the Quanta Defendants should have made an application to stay this application over nineteen months ago when this case was filed. They did not, and are now poorly positioned to file a belated request citing the alleged conservation of resources achieved by this Motion. *See Amiga Development LLC v. The Hewlett-Packard Company,* Civil Action No. 2:04-CV-242 ("Although HP correctly notes that discovery is not complete and the court has not issued a claim construction ruling, the court observes that the re-examination was instituted over a year after the case was filed".)

The Quanta Defendants' allegations that this is in the early stage of the case is plainly false. Discovery opened in this case on July 11, 2007. Extensive written discovery has been served on both the Quanta and ASUStek Defendants. Depositions have also been taken of both groups of Defendants. The Quanta and ASUS Defendants have collectively produced some over three hundred thousand pages of documents. Therefore, while it may appear that discovery has yet to begin for the Quanta Defendants, this myopic perspective is solely a function of their refusal to yield further depositions or to properly respond to interrogatories. Plainly, however,

9

the Quanta Defendants cannot manufacture the circumstances favoring the entry of a stay by balking at discovery.

Further, and as set forth above, while the Court has not entered a construction of the asserted claim of the '981 patent, the parties have completed all briefing through PR 4-3 and claim construction briefs are due on March 28, 2008. Given the resources the parties have already invested in this case, staying this case based upon the speculation about what might happen in reexamination would be inefficient. *See Soverain*, 356 F. Supp 2d at 663.

### C. The Quanta Defendants Have Failed to Produce Documents Relevant to Their Application for Reexamination.

Aside from the disingenuine bases cited in support of their Motion, the Quanta Defendants raise the disturbing, yet recurring, issue concerning their failure to comply with the Amended Discovery Order.

Apparent from their application, the Quanta Defendants submitted an application for reexamination on November 20, 2007. This application was plainly relevant to the issues of this case since, as the Quanta Defendants readily admit, the request for reexamination goes directly to the issue of the validity of the '981 patent. Therefore, documents relating to the application for reexamination should have been disclosed pursuant to the initial disclosure requirements of the Amended Discovery Order over five months ago. Characteristic of their other abuses of the discovery process in this case, however, the Quanta Defendants did not produce these documents.

The Quanta Defendants' request to produce documents evidencing their application for a stay coincides with their refusal to yield deposition discovery. Apparently, the Quanta Defendants determined in November of 2007 that this Court would grant their application, and unilaterally refused to provide further deposition discovery.

10

This misconduct, which has been repeated throughout this litigation, is again demonstrative of the improper motives underling Defendants' Motion.

## IV.
## CONCLUSION

For the reasons set forth above, the Quanta Defendants have not met their burden in demonstrating that a stay should be issued in this case and thus their motion should be denied.

Respectfully submitted,

Date:   March 27, 2008

*/s/ Sidney Calvin Capshaw, III*
Gregory M. Luck, P.C.
Thomas W. Sankey, P.C.
Wesley W. Yuan
Duane Morris LLP
3200 Southwest Freeway, Suite 3150
Houston, Texas  77027-7532
Telephone:     (713) 402-3900
Facsimile:     (713) 402-3901

Jeffrey Pollack
Duane Morris LLP
30 South 17th Street
Philadelphia, PA  19103-4196
Telephone:     (215) 979-1299
Facsimile:     (215) 979-1020

Timothy N. Trop
Attorney-in-Charge
Trop, Pruner & Hu, P.C.
1616 S. Voss Rd., Suite 750
Houston, Texas  77057-2631
Telephone:     (713) 468-8880
Facsimile:     (713) 468-8883

Sidney Calvin Capshaw, III
Brown McCarroll, L.L.P.
1127 Judson Road, Suite 220
Longview, Texas  75601-5157
Telephone:     (903) 236-9800
Facsimile:     (903) 236-8787

ATTORNEYS FOR PLAINTIFF

11

## CERTIFICATE OF SERVICE

I hereby certify that, on this  27th  day of March 2008, all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3).

*/s/ Sidney Calvin Capshaw, III*
Sidney Calvin Capshaw, III

DM3\692385.1 E7752-00001