1

1          IN THE UNITED STATES DISTRICT COURT

2          FOR THE EASTERN DISTRICT OF TEXAS

3              MARSHALL DIVISION

4   LASERDYNANMICS, INC.,    )(

5                    )(  CIVIL DOCKET NO.

6                    )(  2:06-CV-348-TJW-CE

7   VS.              )(  MARSHALL, TEXAS

8                    )(

9   ASUS COMPUTER        )(  JUNE 30, 2009

10   INTERNATIONAL, ET AL.   )(  8:34 A.M.

11              MOTIONS HEARING

12      BEFORE THE HONORABLE JUDGE CHAD EVERINGHAM

13          UNITED STATES MAGISTRATE JUDGE

14

15   APPEARANCES:

16   FOR THE PLAINTIFF:  MR. GREGORY M. LUCK
              MR. WESLEY W. YUAN
17              Duane Morris - Houston
              3200 Southwest Freeway
18              Suite 3159
              Houston, Texas 77027
19
    APPEARANCES CONTINUED ON NEXT PAGE:
20
    COURT REPORTER/TRANSCRIBER:   MS. SUSAN SIMMONS, CSR

21                       Official Court Reporter
                       100 East Houston
22                       Suite 125
                       Marshall, Texas 75670
23                       903/935-3868

24
   (Proceedings recorded by electronic recording equipment,
25   transcript produced on a CAT system.)

2

```
 1              MR. JEFFREY S. POLLACK
                Duane Morris LLP - PA
 2               30 South 17th Street
                Philadelphia, PA 19103
 3
                MR. DAYMON JEFFREY RAMBIN
 4               Capshaw DeRieux, LLP
                1127 Judson Road
 5               Suite 220
                Longview, Texas 75601-5157
 6
                MS. DIANA M. SANGALLI
 7               Trop Pruner & Hu - Houston
                1616 S. Voss Road
 8               Suite 750
                Houston, Texas 77057-2631
 9
     FOR DEFENDANTS:     MR. S. CHRISTIAN PLATT
10                 Paul Hastings Janofsky & Walker
                4747 Executive Drive
11               12th Floor
                San Diego, CA 92121
12
                MS. KATHERINE F. MURRAY
13               Paul Hastings Janofsky & Walker
                515 S. Flower Street
14               25th Floor
                Los Angeles, CA 90071-2228
15

16

17

18

19

20
```

21

22

23

24

25

3

1                    I N D E X

2

3   June 30, 2009

4                           Page

5   Appearances                1

6   Court Reporter's Certificate      18

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

4

1          P R O C E E D I N G S

2          COURT SECURITY OFFICER:  All rise.

3          THE COURT:  Be seated.

4          All right.  We'll hear argument on the

5    issues raised in the bench briefs that were filed I

6    guess late last week, early this week.

7          The first one that was filed was the bench

8    brief regarding January 21 order and nonproduction of

9    drive tracing documents.

10          Mr. Luck?

11          MR. LUCK:  Good morning, Your Honor.

12          THE COURT:  Morning.

13          MR. LUCK:  The relief we sought was to

14    preclude the introduction of documents and other

15    evidence produced outside the 15 days after the January

16    21st order.  In light of the Court's order and in light

17    of the response, including the stipulation from

18    Defendants on the use by their damages expert that he

19    would not rely upon a new speculation as to the source

20    of Sony drives, I think almost all of the issues that we

21   saw in their fallout, here again they were speaking --

22          THE COURT:  The Malaysian speculation is out

23   then?

24          MR. LUCK:  Yes, that's correct, Your Honor.

25          THE COURT:  The license issue is out then?

5

1          MR. LUCK:  It is out, and --

2          THE COURT:  Okay.

3          MR. LUCK:  -- again, we were seeking

4    prospective relief.  There's been no violation to date,

5    but --

6          THE COURT:  Oh.  I under -- I understood

7    that from your -- your papers, but I just wanted to --

8    if I can glean a prospective problem, I wanted to solve

9    it.  Okay?

10         So what about the -- the estimate?  There's

11   a -- the second item that you had set forth in your

12   papers?

13         MR. LUCK:  Infringement?

14         THE COURT:  Yes, sir.

15         MR. LUCK:  We believe if -- again, if the

16   Defendants adhere to their commitment promise not to use

17   financial documents produced outside the Court's order,

18   that oughten be an issue either.

19         THE COURT:  Okay.  And -- so what you're

20   telling me is it's -- at least two of the four are at

21   least moot at this point and you don't have any reason

22   to think the other two are going to materialize?

23        MR. LUCK:  That's correct, Your Honor.

24        THE COURT:  All right.  That's what I --

25   takes care of that one.

6

1        Now, then, the second one that was filed was

2   I believe the Defendants' bench brief regarding untimely

3   damages disclosures in discovery.

4        MR. PLATT:  That's right, Your Honor.

5        So under the amended discovery order back in

6   2007 they were supposed to provide us with a calculation

7   of damages.  That -- they promised, promised, promised

8   to get it to us, but they supplemented.  They didn't

9   have a computation in there.  The first computation

10   where they had done the math and put together a number

11   happened just last week.  I believe that's right.  It

12   was -- but they -- that was the first time they had

13   given us a number where Mr. Davis had actually and gone

14   through and said, well, these drives are in and I'm

15   going to multiply it here and these drives are in, I'm

16   going to multiply it here and I'm going to add it up.

17         That was a change in his theory because

18   originally he had -- there was issues of double counting

19   that our expert had pointed out.  Your Honor is aware

20   that he supplemented his report.  He never addressed

21   that double counting, and now he's trying to shift the

22   theory so as to account for that double counting,

23   something that we haven't heard of before.

24        THE COURT:  Okay.  Well, in light of the

25   Court's ruling yesterday -- I mean, aren't both experts

7

1   going to have to do some massaging to their damages

2   numbers?

3         MR. PLATT:  I think our expert's report

4   allows for him to do that.  I -- I think he anticipated

5   different scenarios in his report.

6         THE COURT:  Okay.  All right.

7         MR. PLATT:  I don't think it's the same for

8   their expert.

9         THE COURT:  Okay.  Tell me what -- tell me

10  what's changed and why I ought to allow this

11  supplemental computation, Mr. Luck.

12         MR. LUCK:  Initially, Your Honor, I am at

13  fault for the way I characterized this disclosure.  That

14  was not an amendment to the Davis report.  He did not

15  intend for that to be a amendment.  That was just a

16  summary of his testimony in the deposition.  In the

17  deposition he indicated he was at the end of the day and

18  the numbers had bottomed out in light of pending issues

19  before the Court which had been addressed.  He indicated

20  he would multiply the rate times the base.

21          I was incorrect in the letter I sent

22    indicating this was an amendment to the Davis report.

23    That is not correct.  It was just a summary of his

24    testimony in the deposition.

25          Specifically, the -- the numbers we would

8

1  like to present in a summary of the deposition, similar

2  to the attachment to -- I believe it's Exhibit G, except

3  the numbers for QSI which we understand from the Court's

4  order will now fall away.

5        Also, the -- the line indicating QSI direct

6  and indirect, that will also fall away because that --

7  that issue about the double counting is moot now.

8        So specifically to answer the Court, we

9  would like for Mr. Davis to rely upon a similar --

10       THE COURT:  Unless you've got other evidence

11  that QSI sells direct into --

12       MR. LUCK:  Correct, Your Honor.

13       THE COURT:  -- the country.  I -- what I'm

14  hearing from you is that you do not have that?

15       MR. LUCK:  There is some direct, but it's a

16  very, very small amount.

17       THE COURT:  Okay.  So you want to focus on

18  the QCI numbers that are included in his report?

19       MR. LUCK:  That's correct, Your Honor.

20       THE COURT:  Okay.  All right.

21          MR. PLATT:  If I could just point out, Your

22     Honor, the concern we have with that is he originally

23     had done two separate analysis.  He's done QC -- or he

24     -- I'm sorry, he didn't do the calculation.  But he had

25     set out QCI numbers, and he had set out the QSI numbers.

9

1   Okay.

2         You -- if you do what he did with the QSI

3   numbers, it's a much different damages number, much

4   lower than if you do the QCI numbers.  He didn't tell us

5   which one he was going to do at trial, so they shouldn't

6   be allowed to get up there now and say we're going to

7   put on just the QCI numbers when he also put numbers up

8   for QSI just so they can get a higher damages number

9   which is something they haven't disclosed to us.

10         THE COURT:  Well, was the rate of -- that

11   was applied to the QCI numbers higher than it was with

12   respect to the QSI numbers because they were in

13   integrated computer systems?

14         MR. PLATT:  Right.  He applies a two percent

15   royalty --

16         THE COURT:  All right.  I'll overrule that

17   objection then.  I -- I'm going to allow you to

18   supplement it.  What I need is -- I need a motion for

19   leave from you that attaches the calculations that you

20   intend to present to your -- through your damages

21   expert.  Okay?  I need that attached.

22          I'm -- given what you've told me that the

23   one that you've served is going to fall out, I'm going

24   to -- I'm excluding that as a summary.  Okay?  But what

25   you need to do is you need to file a motion for leave to

10

1   amend his report and to present the numbers in light of

2   the Court's ruling on the license issue.  Okay?

3       MR. LUCK:  Thank you.

4       MR. PLATT:  And, Your Honor, will we be able

5   to respond to that?

6       THE COURT:  Yes --

7       MR. PLATT:  Okay.

8       THE COURT:  -- you can.  But I'm just -- you

9   know, I -- if it's essentially what you've told me

10  today, I'm going to allow them to do it, so I need to

11  get that on file, Mr. Luck, sometime, you know, today.

12  Get your response in before close of business.  Okay?

13      MR. LUCK:  Next --

14      THE COURT:  Well, not before -- if they file

15  it at 4 o'clock, then I'm not going to make you respond

16  by close of business, but I need -- I need the motion

17  for leave, you know, soon as I can get it, Mr. Luck.

18  Okay?

19      MR. LUCK:  Yes, Your Honor.

20      MR. PLATT:  Your Honor, just to be clear, we

21   weren't going to oppose their motion for leave, we just

22   wanted to be able to respond to their damages numbers.

23          THE COURT:  Okay.

24          MR. PLATT:  To have our expert look at what

25   they're going to do and then respond.

11

1        THE COURT:  Well --

2        MR. LUCK:  If you would like, you can confer

3   with him this morning to --

4        THE COURT:  In light -- in -- light of

5   what the Court's done on the licensing issue, I think

6   that's appropriate.  I think y'all ought to confer on

7   it.  Okay?  But I'm not going to -- not intending to

8   hamstring your expert though as to -- if he has to

9   respond to something that's no longer being presented.

10  Okay?  But focus him up on the QCI price.  All right?

11       MR. LUCK:  Okay.

12       THE COURT:  Okay.  Number 2, precluded from

13  relying on facts not disclosed during discovery.

14       I've read the response to the interrogatory

15  that was served.  I've also read the response to the

16  motion for summary judgment that was filed.  How is it

17  different?

18       MR. PLATT:  I think, Your Honor, wasn't --

19  it wasn't put in a discovery response.

20       THE COURT:  All right.  I'll overrule that

21   objection, too, then.  I'll allow that supplementation.

22          The next one is Quanta defendants'

23   noninfringement defenses.  I believe this was filed

24   either last night -- yeah, last night -- with regard to

25   the S-curve theory.

12

1     MS. SANGALLI:  That's correct, Your Honor.

2     They -- they had their -- their

3  noninfringement defenses have been limited to their --

4  either S-curve theory or the position that Plaintiff has

5  not met their burden of proof.

6     And the problem with the S-curve theory

7  that's in their contentions -- they basically have three

8  different types of argument in there.  One of them, it

9  is our position, is contrary to the Court's claim

10  construction.

11     Another one is that they're basically trying

12  to use -- they're -- they're trying to use statements

13  that were made during the re-examination to limit the

14  scopes -- scope of the claims.  Now, that's claim

15  construction.  That's not noninfringement.

16     And the third problem that they have is that

17  they're comparing the accused device to the prior art

18  rather than comparing the accused device to the claim.

19  That's an improper way to present a noninfringement

20  position.

21          If they're allowed to say that we don't --

22   we don't infringe because we practice what the prior art

23   is, we think that would be confusing to the jury.

24          So given that those are the -- you know,

25   basically the three different arguments that they have

13

1   made in their contentions with respect to the S-curve

2   theory and our position really is that there's nothing

3   really that they can present anymore on the S-curve

4   theory and it would be limited to just presenting a

5   noninfringement defense based on failure to satisfy the

6   burden of proof.

7        THE COURT:  Okay.  Let's hear a response.

8        MR. PLATT:  Your Honor, we went over this

9   before.  I think this is an untimely motion for

10   reconsideration.  We did put S-curve in our

11   interrogatory response.  The Court said we'd be able to

12   argue the S-curve theory.  We do not plan on going

13   outside the scope of what our response is.  We're aware

14   of the Court's order, and we're going to comply with

15   that.

16        THE COURT:  Okay.

17        MR. PLATT:  With respect to -- about going

18   against the claim construction, they cherry-picked some

19   language out of our expert's deposition that say he's

20   contradicting it.  That's not the case.  He's not going

21   to testify that way in court.  He's not going to -- he's

22   not going to contradict the Judge's claim construction.

23   That's not going to happen, but --

24        THE COURT:  That's usually the $64,000

25   question, whether he's consistent with claim

14

1   construction.

2        Here's what I'm going to let you do.  Okay?

3   You can't argue that you're just practicing the prior

4   art because that's the improper comparison.  Okay?  Your

5   expert can testify that the S-curve theory does not meet

6   the limitations of Claim 3 as construed by the Court.

7   Okay?  That -- you understand the --

8        MR. PLATT:  Yes.

9        THE COURT:  -- distinction is?

10       MR. PLATT:  Yes.

11       THE COURT:  And how -- how much testimony is

12  he expected to offer with respect -- with regard to the

13  re-exam proceedings and -- and all of that?

14       MR. PLATT:  I think with respect to the

15  re-exam proceedings, it's pointing out that he reviewed

16  that and reviewed the patent and our statement regarding

17  what their patent covered, that it did -- it basically

18  argued to the patent office that they didn't -- that it

19  didn't cover s-curve.

20       THE COURT:  Well -- okay.  When you -- it

21   seems to me to be a -- an issue of claim construction,

22   though, correct?

23            MR. PLATT:  Well, I think the issue there,

24   Your Honor, is that -- you know, there's the old adage

25   that that which, you know, later in time infringes,

15

1   earlier in time --

2        THE COURT:  Anticipates.

3        MR. PLATT:  -- anticipates.  And there was

4   prior art that came up.  It has the S-curve in it, and

5   they told the patent office that's not what we're

6   covering and we think the jury should be allowed to

7   cover -- allowed to consider that.

8        THE COURT:  Okay.  Here's what I'm going to

9   -- here's what I'm going to do with respect to that.

10  I'm going to sign a written order that outlines exactly

11  how far he can go into the re-exam.  I mean, I

12  understand the adage about that which infringes later

13  anticipates it before, but the burdens of proof are

14  different before the jury.  And I'm not sure that -- I'm

15  not sure, there may be other limitations involved other

16  than the S-curve theory that -- that -- that were being

17  discussed in the re-exam, but I'll take a look at that

18  and I'll give you a written order on -- on how far you

19  can go in discussing what the applicant said to the

20  examiner and what the examiner said back regarding

21   S-curve.

22          But what I'm not precluding you from -- I'm

23   allowing you at this point to present a theory that the

24   S-curve method does not infringe the properly construed

25   claims of the '981.

16

1          What I'm not allowing you to do at this

2   point is saying that all you're doing is practicing

3   prior art.  Okay?

4          MR. PLATT:  Got it.

5          THE COURT:  All right.  And I'll get you a

6   more detailed order on that one.  That one seems to me

7   to necessitate a more formal order.

8          What else can I do for y'all this morning?

9          MR. LUCK:  Fine here, Your Honor.

10          Your Honor, I believe we would like a

11   running objection regarding the prior agreements.  I

12   think the Court has already spoken to an issue in

13   limine, but for trial we would like the Court to issue a

14   running objection as to the fact it is -- I mean, to

15   note our objection to the Court's ruling that the prior

16   agreements are able to come in.

17          THE COURT:  I understand.  I saw the filing

18   for it.  Have you conferred with the other side about

19   the form of a proper running objection?

20          MR. RAMBIN:  We provided this -- this

21   document to opposing --

22        THE COURT:  Why don't y'all talk about it

23   and then raise that at the first break upstairs with

24   Judge Ward since I'm pretty sure that y'all don't want

25   me instructing these two folks that are sitting over

17

1   here in this jury box.  Okay?  He'll -- he'll be the one

2   that gives the instruction.  I want to make sure that

3   what you present to him has been conferred upon and that

4   he's comfortable with it.  Okay?  Because he'll be

5   giving it, not me.

6          MR. LUCK:  Thank you, Your Honor.

7          THE COURT:  All right.  All right.

8             * * * * * * * * * *

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

18

1          CERTIFICATION

2

3          I HEREBY CERTIFY that the foregoing is a

4   true and correct transcript from the electronic

5   recording of the proceedings in the above-entitled

6   matter to the best of my ability.

7

8

9
     SUSAN SIMMONS                    Date
10   Official Court Reporter
     State of Texas No.: 267
11   Expiration Date:    12/31/10

12

13

14

15

16

17

18

19

20

21

22

23

24

25