1

1   IN THE UNITED STATES DISTRICT COURT

2   FOR THE EASTERN DISTRICT OF TEXAS

3    MARSHALL DIVISION

4 LASERDYNANMICS, INC., )(

5    )( CIVIL DOCKET NO.

6    )( 2:06-CV-348-TJW-CE

7 VS.   )( MARSHALL, TEXAS

8    )(

9 ASUS COMPUTER  )( JULY 1, 2009

10 INTERNATIONAL, ET AL. )( 8:30 A.M.

11   MOTIONS HEARING

12  BEFORE THE HONORABLE JUDGE CHAD EVERINGHAM

13   UNITED STATES MAGISTRATE JUDGE

14

15 APPEARANCES:

16 FOR THE PLAINTIFF: MR. WESLEY W. YUAN
    Duane Morris - Houston
17    3200 Southwest Freeway
    Suite 3159
18    Houston, Texas 77027

19 APPEARANCES CONTINUED ON NEXT PAGE:

20 COURT REPORTER/TRANSCRIBER: MS. SUSAN SIMMONS, CSR
    Official Court Reporter

21             100 East Houston
             Suite 125
22              Marshall, Texas 75670
             903/935-3868
23

24
   (Proceedings recorded by electronic recording equipment,
25   transcript produced on a CAT system.)

2

```
 1              MR. JEFFREY S. POLLACK
                Duane Morris LLP - PA
 2               30 South 17th Street
                Philadelphia, PA 19103
 3
                MR. DAYMON JEFFREY RAMBIN
 4               Capshaw DeRieux, LLP
                1127 Judson Road
 5               Suite 220
                Longview, Texas 75601-5157
 6

 7
   FOR DEFENDANTS:     MS. KATHERINE F. MURRAY
 8               Paul Hastings Janofsky & Walker
                515 S. Flower Street
 9               25th Floor
                Los Angeles, CA 90071-2228
10

11

12

13

14

15

16

17

18

19

20
```

21

22

23

24

25

3

1                       I N D E X

2

3   June 30, 2009

4                               Page

5   Appearances                    1

6   Court Reporter's Certificate        15

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

4

1          P R O C E E D I N G S

2          COURT SECURITY OFFICER:  All rise.

3          THE COURT:  Please be seated.

4          Okay.  We're on the record in the

5   LaserDynamics against Quanta Storage matter.  The

6   parties -- I think the Plaintiff had raised an issue

7   before the jury came in about two demonstratives, and

8   Judge Ward has asked me to hear the objections while the

9   trial is proceeding upstairs.

10          So before I get started, have y'all met and

11   conferred on these?

12          MR. POLLACK:  We did this morning, Your

13   Honor.

14          THE COURT:  Okay.  Any resolution?

15          MR. POLLACK:  No resolution, Your Honor.

16          THE COURT:  Okay.  Do you have copies of the

17   demonstratives that Ms. Murray --

18          MS. MURRAY:  I do, Your Honor.

19          THE COURT:  Okay.  Okay.  Well, just -- for

20   purposes of the record, who's here for the Plaintiff?

21          MR. POLLACK:  For Plaintiff, Jeff Pollack,

22  Duane Morris.  With me is Jeff Rambin of Capshaw DeRieux

23  and Wesley Yuan from Duane Morris.

24          THE COURT:  Okay.  And Ms. Murray is here

25  for the Quanta defendants?

5

1        MS. MURRAY:  Yes, sir.

2        THE COURT:  Okay.  All right.  Y'all have a

3   seat.

4        Tell me -- what's the objection?

5        MR. POLLACK:  Your Honor, they've produced

6   this -- was two demonstratives, and they're basically

7   identical.  One has a dollar sign on it and one does

8   not.  In our bench brief that was argued yesterday, we

9   had complained that Quanta had not given us any

10   documents identifying the -- the way the drives were

11   obtained, vis-a-vis the pathways through Philips and

12   Sony, NEC Optiarc.

13        In response, the documents that Quanta

14   identified to us are -- sorry, records identifying

15   computers sold by QCI, sales records, and records

16   identifying all computers sold by QCI.

17        What we haven't seen and what's in this

18   demonstrative are any records showing purchased drives,

19   provide shipping instructions from what's on this

20   demonstrative, customers going to drive vendors, and

21   anything showing -- certainly not showing anything where

22   the OEM, such as Quanta computer, are paying customers,

23   such as HP and Dell, for drives.  In fact, that defies

24   common sense since we know that Quanta computer is in

25   the business of selling computers to those customers,

6

1  not buying drives from them.

2       And, you know, I think what Quanta may come

3  out and say -- I'm predicting here is that they have

4  produced invoices to us that show this transaction.

5  What the invoices are showing is not a purchase of the

6  drives, but the sale of a computer.

7       So we think that this demonstrative -- both

8  these demonstratives are misleading and go well outside

9  the documents produced in the case.

10       THE COURT:  What do the invoices show that

11  have been produced from Quanta computer to the

12  customers?

13       MS. MURRAY:  Your Honor, there are hundreds

14  of thousands of pages of invoices.  I think there's some

15  confusion here about what the bench brief was related to

16  and what -- what we're trying to show by this slide.

17       The invoices show purchases of components,

18  and they also show sale of computers which contain those

19  components in them.  But when Quanta sells a computer

20  back to the customer, it doesn't then charge for each

21   component part.  It just charges for the computer.

22          This demonstrative, just to put it in

23   context, is explaining just one way that Quanta Computer

24   obtains its drives.  This was brought out already by

25   Plaintiff in his case-in-chief yesterday, that there's a

7

1   buy/sell arrangement where Quanta actually purchases a

2   drive first from a customer, then puts it in its

3   computers, and then sells it back to the customer.

4   That's been in the agreements that were shown to the

5   jury yesterday.  Those manufacturing agreements between

6   Quanta and its customers explain this entire

7   transaction.  We've produced all of those to them, and

8   our witness has testified about it in Plaintiff's

9   case-in-chief.  They had it in their opposition to

10   summary judgment.  They have a whole section that we

11   purchase our drives from our customers.

12          This isn't any new information.  We're not

13   using it, based on our bench brief yesterday which was

14   to rebut their -- any testimony from their damages

15   expert, that's not what we're using this for.  This is

16   just background to show this is one method that Quanta

17   uses to obtain its drives.

18          MR. POLLACK:  Your Honor, having -- having

19   heard that now, my understanding of who Quanta claims

20   their customers are from direct yesterday, are the drive

21  vendors, the companies like Optiarc, Philips, etc.  And

22  they way this --

23          MS. MURRAY:  That's not accurate.

24          MR. POLLACK:  -- the way this exhibit show

25  -- is set up --

8

1       THE COURT:  Hold -- hold on, Ms. Murray.

2   Let's -- I'll let you respond --

3       MS. MURRAY:  I'm sorry, Your Honor.

4       THE COURT:  No, we don't do back and forth

5   in here.  Okay?  At least -- we'll do back and forth,

6   but not between y'all, to me.

7       MS. MURRAY:  I understand.  I apologize.

8       MR. POLLACK:  Well, let me -- let me -- let

9   me retract and think about this, Your Honor.

10       MR. RAMBIN:  Your Honor, let me -- the --

11   what they're doing is they're changing horses.  Our

12   understanding all along in the case was that QCI, the

13   computer manufacturer, was getting these drives directly

14   from the ODD, the disk drive manufacturer, be it QSI

15   directly or by the QSI drives that went to Sony and

16   Phillips and then back into QCI.

17       What this demonstrative is doing and

18   apparently what they're going to try to testify to is

19   something new, saying that those drives -- here's QCI,

20   the drives come -- go all the way up to Dell, HP, Apple,

21   those sorts, and then come back to QCI.  That's new.

22   That's outside of the documents.

23           And, again, in the bench brief it did go to

24   the issue of what they could use to rebut James Davis,

25   but the fundamental question was we don't know how QCI

9

1   is getting the drives coming in.  We said we -- we

2   didn't have any documents to that effect.  And in their

3   response they try to say yes.  Here's what we've told

4   you about where QCI gets its drives coming in, and

5   there's nothing in this briefing.  There's nothing in

6   the documents attached hereto that says anything about

7   HP, Dell, Apple.  There's not one word of it, not one

8   mention of it.

9          If they can find it in here, then -- then we

10  will apologize and stand down, but --

11         THE COURT:  I'm not -- I don't know that

12  anybody is looking for an apology, Mr. Rambin, but what

13  was the -- in the summary judgment motion -- well, what

14  contracts were produced that show that you purchased

15  drives from HP, Dell, IBM, Lenovo, Fujitsu, these other

16  folks?

17         MS. MURRAY:  Your Honor, the manufacturing

18  agreement between Quanta and its customers, some of

19  those were actually used in trial yesterday, the Apple

20  agreement, the Sony agreement.  These agreements show

21   that Apple decides what components to use and actually

22   purchases those components and Quanta then purchases

23   them from Apple.

24          It's called the buy/sell arrangement.  It

25   was in every deposition in this case.  They talked about

10

1    -- this is not new.  Mr. Sankey took the depositions of

2    Quanta Computers' witnesses.  He said how do you get

3    these drives.  Well, there's different ways.  Sometimes

4    we do get it from the drive supplier and we will explain

5    that as well, but sometimes we get it from the customer.

6    And he asked, and how do you know which of those drives

7    you get from a customer.  Well, let's look at this

8    document we produced.  It has a B/S next to those drives

9    that are buy and sell.  That document was shown to Ms.

10   Li during trial yesterday.  It shows which drives we get

11   from our customer and then it lists the name of the

12   customer that we got those drives from.  And this isn't

13   new.  This is background of one of the methods we get

14   our drives.  It is -- I'm a little surprised that

15   there's -- they're saying that they heard this for the

16   first time.

17          We can produce the deposition transcripts.

18   This isn't new information.  It's in our documents.

19          We also have a DVD drive manufacturer list.

20   It's a list of every single drive that Quanta Computer

21   has obtained and then it has the name of the

22   manufacturer and if they got it from a customer, it has

23   a B/S next to it that shows it was part of this buy/sell

24   arrangement.

25          We also have a document showing which

11

1   customer they got it from.

2          THE COURT:  Are those depositions in the

3   building, or a sampling of them?

4          MS. MURRAY:  We have -- I believe we have

5   all the depositions from the case, Your Honor, upstairs.

6          THE COURT:  On a disk?  Okay.  When -- when

7   do you propose to use this?

8          MS. MURRAY:  We propose to use this when we

9   put on our first witness.  We're not sure -- Plaintiff

10  won't tell us which witnesses they're calling, so we

11  don't know.

12         THE COURT:  How many more witnesses do y'all

13  have?

14         MR. POLLACK:  We have at least three more

15  witnesses.

16         THE COURT:  Okay.  Is one -- two experts,

17  though, are included in that?

18         MR. POLLACK:  Three experts, Your Honor.

19         THE COURT:  Three experts are included in

20  that?  Okay.  Supply me with a sampling of the

21   depositions and a sampling of the contracts that --

22   produced that show that you all buy your drives from

23   these customers.  Okay?

24          MS. MURRAY:  Okay.

25          THE COURT:  And if those documents have been

12

1   produced, then I'm going to allow them to use them.

2   Okay?  If they've been testified about at deposition,

3   then you're going to get to use them.  Okay?  I'm not

4   trying to -- I'm not trying to be heavy-handed with you.

5   I just want to insure myself that --

6           MS. MURRAY:  And I understand.

7           THE COURT:  -- that

8           MR. RAMBIN:  Your Honor --

9           THE COURT:  I'm hearing -- it's difficult

10   when I hear we've produced it all, they haven't produced

11   any of it, this is all news --

12          MS. MURRAY:  No, I understand and that they

13   weren't at the deposition so they may not remember them.

14          THE COURT:  I understand.

15          MS. MURRAY:  There were a lot of

16   depositions.

17          THE COURT:  I understand.  I understand.

18          MR. POLLACK:  Your Honor, if I may, even if

19   there are documents showing that their purchase is

20   coming from the customers of Apple and Dell, I certainly

21   don't think there are any documents showing that Quanta

22   Computer is paying these customers for the drives, and I

23   don't know where that would come from.

24          MR. RAMBIN:  I think --

25          MS. MURRAY:  That's in our agreement.

13

1          MR. RAMBIN:  I think, Your Honor, that they

2    may be trying to say that in general this is what they

3    do.  I don't -- maybe there are contracts out there.  I

4    don't know.  I don't believe that there are, but -- but

5    the thing is though, as to the accused drives, for that

6    there are certainly no invoices as to the accused drives

7    where QCI is paying for those drives from Dell, Apple,

8    HP, etc.

9          MS. MURRAY:  Well, the contracts will cover

10   all the drives that Quanta Computer gets from its

11   customers.

12          THE COURT:  Well, I mean, like I said, I'll

13   take a look at it.  As I understand it, you're wanting

14   to use this in a general sense to show one way that

15   Quanta --

16          MS. MURRAY:  Yes.

17          THE COURT:  -- gets its drives?

18          MS. MURRAY:  Yes.

19          THE COURT:  Well, I'm going to take a look

20   at what they've produced, and even if the accused drives

21   would fall into this category, I think they're entitled

22   as a background matter to show, you know, what their

23   business is.  I mean, y'all -- I mean, it's a business

24   case and the jury is entitled to know that.  So I'm --

25   I'll take a look at what's been produced.

14

1        MR. POLLACK:  Thank you, Your Honor.

2        MS. MURRAY:  Thank you, Your Honor.

3        THE COURT:  All right.  How soon, Ms.

4   Murray, can I expect those items?

5        MS. MURRAY:  I'll do it -- I'll grab them

6   right now.

7        THE COURT:  Fast as I can get them.

8        MS. MURRAY:  Can I give you hard copies,

9   or --

10        THE COURT:  That's fine.

11        MS. MURRAY:  -- or you like --

12        THE COURT:  That's fine.  You can give me

13   hard copies.  Just -- if I can get them in an hour or

14   so, that would help.

15        MS. MURRAY:  I'll shoot upstairs and --

16        THE COURT:  Just -- it's -- I just -- I just

17   want to take a look at a --

18        MS. MURRAY:  Okay.

19        THE COURT:  Focus on agreements with these

20   folks.  Okay?

21          COURT SECURITY OFFICER:  All rise.

22          THE COURT:  The Court's in recess.

23               * * * * * * * * * *

24

25

15

1                         CERTIFICATION

2

3               I HEREBY CERTIFY that the foregoing is a

4    true and correct transcript from the electronic

5    recording of the proceedings in the above-entitled

6    matter to the best of my ability.

7

8
      SUSAN SIMMONS                         Date
9     Official Court Reporter
      State of Texas No.: 267
10    Expiration Date:  12/31/10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25