UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| LASERDYNAMICS, INC., § | | |
|     *Plaintiff,* § | | |
| § | | |
| v. § | | CASE NO. 2:06-CV-348-TJW |
| § | | |
| QUANTA COMPUTER, INC., et al., § | | |
|     *Defendants*. § | | |

**MEMORANDUM OPINION AND ORDER**

Before the Court is Defendant Quanta Computer, Inc.'s ("QCI's") motion for new trial and/or remittitur on the issues of damages. [Dkt. No. 592.] The Court has carefully considered the parties' submissions, the record, and the applicable law. For the following reasons, the Motion is GRANTED.

**I.    BACKGROUND**

The parties to this case selected a jury on June 1, 2009. The trial commenced on June 30, 2009 and the jury reached its verdict on July 6, 2009. The jury found that defendant QCI infringed claim 3 of U.S. Patent No. 5,587,981 ("the '981 patent"), that asserted claim 3 is not invalid, that QCI's infringement was willful, and that the plaintiff, LaserDynamics, Inc. ("LaserDynamics") recover from QCI a reasonable royalty of Fifty Two Million Dollars ($52,000,000) in actual damages. [*See* Dkt. No. 533.] The Court conducted a bench trial on the defense of inequitable conduct on August 10, 2009 and issued an order denying that defense on August 17, 2009. [*See* Dkt. No. 562.] On January 6, 2010, the Court entered Final Judgment in favor of LaserDynamics in accordance with the jury's verdict, awarding an additional Five Million, Four Hundred Fifty Six Thousand, One Hundred Thirty Six Dollars ($5,456,136) in pre-judgment interest for a total award to LaserDynamics of Fifty Seven Million, Four Hundred Fifty

Six Thousand, One Hundred Thirty Six Dollars ($57,456,136). [*See* Dkt. No. 588.] QCI moved for judgment as a matter of law on the issue of infringement, and this Court denied such request. [*See* Dkt. Nos. 594 and 614.] QCI also moved for a new trial and/or remittitur on the issue of damages. [Dkt. No. 592.] The Court found that QCI did not waive its right to seek a new trial or remittitur, but denied QCI's request on the presented grounds of an allegedly improper Court instruction, improper hypothetical negotiation date, and improper calculation of prejudgment interest, and the Court's allegedly improper rulings on the exhaustion doctrine and implied license. [*See* Dkt. Nos. 613.] However, the Court did not determine whether the damages award is clearly excessive and against the great weight of evidence and requested additional briefing on this issue. [*See id.*] Thus, the issue presented before the Court is, pursuant to Rule 59(a), whether the damages award is clearly excessive and against the great weight of evidence for this Court to award a new trial or remittitur.

## II.   LEGAL STANDARD

A motion for a new trial is a procedural issue not unique to patent law, reviewed under the law of the regional circuit in which the appeal from the district court would normally lie. *Riverwood Intern. Corp. v. R.A. Jones & Co., Inc.,* 324 F.3d 1346, 1352 (Fed. Cir. 2003). The court "may, on motion, grant a new trial on all or some of the issues–and to any party–as follows: after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court . . . ." FED. R. CIV. P. 59(a). "A new trial may be granted, for example, if the district court finds the verdict is against the weight of the evidence, the damages awarded are excessive, the trial was unfair, or prejudicial error was committed in its course." *Smith v. Transworld Drilling Co.*, 773 F.2d 610, 612-13 (5th Cir. 1985). "The decision to grant or deny a motion for a new trial is within the discretion of the trial court and will not be disturbed

absent an abuse of discretion or a misapprehension of the law." *Prytania Park Hotel, Ltd. v. General Star Indem. Co.*, 179 F.3d 169, 173 (5th Cir. 1999). The Court "may set aside a damages award and remand for a new trial only upon a clear showing of excessiveness." *i4i Ltd. Partnership v. Microsoft Corp.*, 598 F.3d 831, 857 (Fed. Cir. 2010) (citations omitted). A pre-verdict JMOL is not a prerequisite for a motion for a new trial. *See Coughlin v. Capitol Cement Co.*, 571 F.2d 290, 297-98 (5th Cir. 1978).

### III.   DISCUSSION

QCI seeks a new trial on damages, or at the least, remittitur. QCI argues that the jury award of damages is clearly excessive and against the weight of the evidence because (1) the royalty base presented to the jury was improper because there is insufficient support for the application of the "entire market value" rule and (2) the royalty rate awarded by the jury was grossly excessive. The evidence at trial showed that LaserDynamics had entered into numerous lump-sum licenses for the '981 patent ranging from $57,750 to $266,000. QCI argues that the maximum amount that the evidence would support would be a $0.12 per drive royalty resulting in an award of $452,000 in damages. QCI argues that the prior licenses that LaserDynamics entered into on the same '981 patent are nowhere near the $52 million award granted by the jury. LaserDynamics argues that the jury's award is not against the great weight of evidence, was properly supported by substantial evidence, and that a new trial or remittitur is inappropriate.

#### A.  Entire Market Value Rule

Dr. Murtha, LaserDynamics' damages expert, invoked the "entire market value" rule in identifying the royalty base in this case. Dr. Murtha opined that, in addition to a 6% royalty to QCI's sale of stand-alone drives, a 2% royalty should apply to the assembled computers sold by QCI. Based on the verdict, both parties agree that the jury appears to have applied a 6% royalty

to QCI's sale of stand-alone drives and a 2% royalty to QCI's sales of finished computers incorporating the allegedly infringing drives to arrive at the $52 million verdict. As part of his testimony, Dr. Murtha conceded that the average price of a QCI drive was $28, and that the average price of a QCI-assembled computer was $860. Applying his two rates, the drive royalty (6% x $28) produces a royalty to LaserDynamics of approximately $1.69 per drive and the computer royalty (2% x $860) produces a royalty to LaserDynamics of approximately $17.20 per assembled computer.

Damages are recoverable under the entire market value rule only "if the patented apparatus was of such paramount importance that it substantially created the value of the component parts." *Rite-Hite Corp. v. Kelley Co., Inc.*, 56 F.3d 1538, 1549 (Fed. Cir. 1995) (citations omitted); *see IP Innovation L.L.C. v. Red Hat, Inc.*, --- F. Supp. 2d ----, 2010 WL 986620, *1-2 (E.D. Tex. 2010). Therefore, "the patentee must prove that the patent-related feature is the basis for customer demand." *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1336 (Fed. Cir. 2009) (citations omitted); *see Rite-Hite*, 56 F.3d at 1549; *Bose Corp. v. JBL, Inc.*, 274 F.3d 1354, 1361 (Fed. Cir. 2001); *TWM Mfg. Co., Inc. v. Dura Corp.*, 789 F.2d 895, 901 (Fed. Cir. 1986); *Imonex Services, Inc. v. W.H. Munzprufer Dietmar Trenner GMBH*, 408 F.3d 1374, 1379 (Fed. Cir. 2005). Further, it is not appropriate in cases where the unpatented components "have essentially no functional relationship to the patented invention and . . . may have been sold with an infringing device only as a matter of convenience or business advantage." *Rite-Hite*, 56 F.3d at 1550; *Imonex*, 408 F.3d at 1379; *see Cornell Univ. v. Hewlett-Packard Co.*, 609 F. Supp. 2d 279, 286-87 (N.D.N.Y. 2009).

The Court finds that there is no basis for the "entire market value" rule in this case. The price of the finished computers should not have been included in the royalty base.

LaserDynamics presented no evidence that its patented method drove the demand for QCI's finished computers. *See Lucent*, 580 F.3d at 1337 ("The first flaw with any application of the entire market value rule in the present case is the lack of evidence demonstrating the patented method of the Day patent as the basis-or even a substantial basis-of the consumer demand for Outlook.")  The claimed invention embodied in the disc-drive is but one relatively small component of the entire assembled computer.  The Court finds that there is nothing in the record that shows the demand for QCI's assembled computers was in any way driven by LaserDynamics' disc-discrimination method patent.  LaserDynamics "did not carry its evidentiary burden of proving that anyone purchased [the assembled computer] because of the patented method." *See Lucent*, 580 F.3d at 1337.  LaserDynamics points to no evidence that QCI sold more of the assembled computers because of inclusion of drives practicing LaserDynamics' method patent.  The failure to offer any evidence that a disc-discrimination method patent drove the demand for the much larger finished good precludes application of the entire market value rule. *See Imonex*, 408 F.3d at 1379-80.  At best, Dr. Murtha testified that almost all computers sold in the retail market include optical disc drives and that customers would be hesitant to purchase computers without an optical disc drive.  This evidence notwithstanding, there was no evidence from which the jury could conclude that the patented features of the invention formed the basis for the customer's demand for the entire computer.  Further, the undisputed evidence is that an optical disc drive could be and were sold both as integrated units and separately.  More specifically, computers could and often do function without an optical disc drive.  The fact that drives are sometimes included in an assembled computer does not render them a functional unit. LaserDynamics' theory in this case yields a damages model far in excess of what is adequate to

5

compensate for the infringement. The Court finds that LaserDynamics is not entitled to use the entire market value of the assembled computers as a royalty base in this case.

### B. Royalty Rate

The Court finds that the 6% rate found by the jury to QCI's sale of stand-alone drives is not grossly excessive. During trial, both sides provided evidence and testimony supporting their positions. The jury found LaserDynamics' evidence more credible. LaserDynamics' expert offered testimony based on credible evidence, which the jury apparently believed, justifying his opinions on the royalty rate and damages calculations. While some of the previous licenses LaserDynamics had entered into had a lower royalty rate and all had been lump-sum licenses, the Court will not reject the jury's findings and supplant its judgment for the jury's verdict where the evidence in the record can support the jury's verdict. Pursuant to Rule 59, the Court should uphold the jury award so long as it is not clearly excessive. *i4i*, 598 F.3d at 857. The Court concludes that a 6% rate, equating to a royalty rate of $1.69 per drive, is not clearly excessive based upon all of the evidence presented at trial.

### C. Remittitur of the Damages Award

"A verdict will be considered excessive only if it is greater than the maximum amount the trier of fact could properly have awarded." *Hernandez v. M/V Raajan*, 841 F.2d 582, 587 (5th Cir. 1988). Faced with an excessive damages award, a "court may either order a new trial on damages or may give the plaintiff the option of avoiding a new trial by agreeing to a remittitur of the excessive portion of the award." *Id.* "Remittitur is the process by which a court compels a plaintiff to choose between reduction of an excessive verdict and a new trial." *Cornell*, 609 F. Supp. 2d at 285-86 (citations omitted). The Fifth Circuit follows the "maximum recovery" rule to determine the remitted amount, i.e., "the maximum amount the finder of fact could properly

have awarded." *Hernandez*, 841 F.2d at 587.  This Court will allow the "plaintiff the option of a new trial on damages or the remitted damages award." *Shockley v. Arcan, Inc.*, 248 F.3d 1349, 1362 (Fed. Cir. 2001); *see Imonex*, 408 F.3d at 1380.

After considering the evidence as a whole, the Court agrees with QCI that the jury's award of $52 million was against the great weight of the evidence because there is insufficient support for the application of the "entire market value" rule.  In its additional briefing on the issue of the motion for new trial and/or remittitur, QCI notes that if the Court were to apply the same per drive royalty of $1.69 for the stand-alone drives to the finished computers in lieu of applying the entire market value rule, the resulting award would be approximately $6.2 million.  The Court finds that applying the same per drive rate for both the stand-alone drives as well as to the finished computers is the appropriate method for calculating damages in this case when the entire market value rule is not available.  Thus, the Court remits the damage award to $6.2 million, the largest amount properly supported by the evidence.  LaserDynamics has ten (10) days from the entry of this order to notify the Court of its election in writing.  The Court rejects the remaining arguments raised by QCI relating to damages.

### IV.    CONCLUSION

The Court has carefully considered the parties' submissions, the record, and the applicable law.  For the reasons stated above, the Court GRANTS QCI's motion for new trial on damages or for remittitur.  LaserDynamics has ten (10) days from the entry of this order to either elect the remitted award of $6.2 million or to have a new trial on the issue of damages.

IT IS SO ORDERED.

SIGNED this  9th  day of June, 2010.

_____
T. JOHN WARD
UNITED STATES DISTRICT JUDGE