UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| LASERDYNAMICS, INC. | § | |
| | § | |
| vs. | § | CASE NO. 2:06-CV-348 |
| | § | |
| QUANTA COMPUTER, INC., ET AL. | § | |

## MEMORANDUM OPINION AND ORDER

### I. INTRODUCTION

Pending before the court is plaintiff LaserDynamics, Inc.'s ("Laser") motion to exclude the expert reports and corresponding trial testimony of defendant Quanta Computer, Inc.'s ("Quanta") expert, Richard G. Zech (Dkt. No. 667). Laser contends that Dr. Zech's opinions are flawed, irrelevant, and unreliable and therefore should be stricken. For the reasons discussed below, the court GRANTS-in-part and DENIES-in-part Laser's motion to strike Dr. Zech's expert reports. The motion is GRANTED as to: (1) Dr. Zech's November 1, 2010 non-infringing alternatives expert report; and (2) any reference to those alternatives in Dr. Zech's November 15, 2010 rebuttal expert report. The motion, however, is DENIED as to the balance of Dr. Zech's November 15, 2010 expert report.

### II. FACTUAL BACKGROUND

In August 2006, Laser filed suit against Quanta, alleging infringement of U.S. Patent No. 5,587,981 ("the '981 Patent"). The '981 Patent describes technology for automatically determining the kind of disk (e.g. CD, DVD, etc.) in an optical disk drive. The parties ultimately went to trial on the questions of infringement, invalidity, and damages. The jury returned a verdict that Quanta infringed claim 3 of the '981 Patent, that it did so willfully, and that the '981 Patent was valid. The jury awarded damages in the amount of $52,000,000. After the verdict,

1

Quanta filed a motion for remittitur or a new trial on damages (Dkt. No. 592). The court concluded that the jury award was against the great weight of the evidence and granted Quanta's motion, ordering Laser to choose either a remittitur of $6,200,000 or a new damages trial (Dkt. No. 620). Laser elected the new damages trial.

In the new damages trial, Quanta's damages expert, Dr. Zech, was asked to examine asserted claim 3 of the '981 Patent and to determine if alternative methods exist for distinguishing between different types of optical discs. In his November 1, 2010 non-infringing alternatives report, Dr. Zech opines that there are numerous ways to perform the process of distinguishing between different types of discs, other than that disclosed in the '981 Patent. Dr. Zech identifies four prior-art patents that he asserts disclose alternative ways of distinguishing between different types of optical discs and explains that one of ordinary skill in the art could use these patents to design alternative methods of disc discrimination. Dr. Zech, however, never opines that Quanta had the necessary equipment, know-how, and experience to implement these alleged alternative designs. In response to a question regarding the standard or test that Dr. Zech used for determining whether an alternative was acceptable, Dr. Zech testified that:

> …I guess I'm a little bothered by the word "acceptable." I don't know, acceptable to who or to whom, I should say? But, you know, basically I was thinking out of the box. There's a path that teaches certain things. Now, I don't make any claims that these patents are directed towards the discrimination of optical disk types; but rather I'm looking at them, I'm looking at the technologies and saying, "What could I extract from this and, perhaps, from another patent, combine them together, and come up with a solution?"

Furthermore, with the exception of one alternative implemented at the 1994 Optical Data Storage Conference, Dr. Zech failed to provide any facts indicating that his alleged alternatives were ever actually reduced to practice by anyone.

Dr. Zech was also asked to review one of Laser's expert's reports regarding patents related to optical disc drives that were included in various license agreements. On November 15, 2010, Dr. Zech submitted his rebuttal expert report in which he opined on various issues, but only mentioned the alleged non-infringing alternatives he identified in his November 1, 2010 report in passing.

In this motion, Laser addresses only alleged deficiencies in Dr. Zech's opinions relating to the proposed non-infringing alternatives identified in his November 15, 2010 report.

## III. LEGAL STANDARD

The trial court acts as a "gatekeeper" to exclude expert testimony that does not meet the relevancy and reliability threshold requirements. In this role, the trial court determines the admissibility of expert testimony based on Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993). Accordingly, opinion testimony is not admissible unless: (1) the witness is qualified "as an expert by knowledge, skill, experience, training, or education," FED. R. EVID. 702; (2) the witness's reasoning or methodology underlying the opinion testimony is scientifically reliable, *Daubert*, 509 U.S. at 592-93; and (3) the testimony is relevant—that is, it must assist the trier of fact to understand the evidence or to determine a fact at issue. FED. R. EVID. 702; *Daubert*, 509 U.S. at 591.

Whether the accused infringer had acceptable non-infringing alternatives available to it at the time of the hypothetical negotiation may be probative of a reasonable royalty for the patented technology. *Georgia-Pacific Corp. v. United States Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970) (stating that "[t]he utility and advantages of the patent property over the old modes or devices, if any, that had been used for working out similar results" is a key factor in a reasonable royalty analysis.); *see also State Contracting & Eng'g Corp. v. Condotte Am., Inc.*,

346 F.3d 1057, 1072 (Fed. Cir. 2003). Although the Federal Circuit has not addressed whether a non-infringing alternative that is not on the market during the accounting period is relevant to the reasonable royalty analysis, it has addressed this issue in the context of lost profit damages. *Micro Chem., Inc. v. Lextron, Inc.*, 317 F.3d 1387, 1393 (Fed. Cir. 2003). In *Grain Processing*, the Federal Circuit explained that, when an alleged alternative is not on the market during the accounting period, the court may reasonably infer that it was not available as a non-infringing alternative. *Grain Processing Corp. v. Am. Maize- Prods. Co.*, 185 F.3d 1341, 1353 (Fed. Cir. 1999). The accused infringer, however, can rebut this presumption by showing that the substitute was in fact "available" to the infringer. *Id.* "Mere speculation or conclusory assertions will not suffice" to overcome the presumption of non-availability. *Id.* The court must, therefore, "proceed with caution in assessing proof of the availability of substitutes not actually sold during the period of infringement" because only those substitutes that the infringer proves were "available" during the accounting period can limit a patentee's damages – substitutes only "theoretically possible" will not. *Id.*

**IV. DISCUSSION**

Laser relies on *Grain Processing* to argue that for non-infringing alternatives to be relevant to a reasonable royalty analysis, the alternatives must be "available" to the infringer during the accounting period. Laser notes that Dr. Zech never opined that the non-infringing alternatives he identifies in his November 1, 2010 report were "available" to Quanta during the relevant time period. As such, Laser argues that Dr. Zech's testimony is irrelevant to the reasonable royalty analysis and therefore should be excluded.

In response, Quanta also relies on *Grain Processing* to argue that the relevant inquiry is not whether Dr. Zech's non-infringing alternatives were actually produced and sold during the

4

damages period but, rather, whether Quanta, the hypothetical negotiator, would believe it could possibly have produced Dr. Zech's non-infringing alternatives. Quanta also argues that the non-infringing alternatives identified by Dr. Zech are relevant to the *Georgia Pacific* factor inquiring into the utility and advantages of the patent property over old modes or devices, if any, that had been used for working out similar results. *Georgia-Pacific*, 318 F. Supp. at 1120.

Quanta's arguments are unpersuasive. To be an acceptable non-infringing substitute, the substitute "must be available or on the market at the time of infringement." *Grain Processing*, 185 F.3d at 1350. In *Grain Processing*, the Federal Circuit provided guidance on the meaning of "available." The defendant in that case conceded that the non-infringing alternative at issue had not been on the market at the time of infringement. *Id.* at 1349. The trial court, however, found that: (1) the defendant could readily obtain all of the material needed to implement the non-infringing alternative; (2) the non-infringing alternative was well known in the field at the time of infringement; and (3) the defendant had all of the necessary equipment, know-how, and experience to use the non-infringing alternative. *Id.* at 1353-54. Considering the factual findings made by the trial court, the Federal Circuit affirmed the conclusion that the non-infringing alternatives were indeed "available" to the defendant at the time of infringement and therefore, were sufficient to preclude lost profits. *Id.* As such, contrary to Quanta's argument, *Grain Processing* does not instruct the court to merely inquire into whether Quanta would believe it was possible to produce the non-infringing alternatives identified in Dr. Zech's report. Rather, *Grain Processing* requires the court to consider whether, among other things, Quanta had the necessary equipment, know-how, and experience to implement those non-infringing alternatives. *Id.* at 1354.

Dr. Zech cited no facts indicating that any of the non-infringing alternatives identified in his report were on the market during the accounting period. Quanta, therefore, bears the burden of proving that the non-infringing alternatives were "available" to it during the accounting period. *Id.* at 1353. Dr. Zech, however, failed to opine as to whether Quanta would be capable of implementing the non-infringing alternatives identified in his report. Although Dr. Zech did state that one alternative was practically implemented at the 1994 Optical Data Storage Conference, he did not opine that Quanta itself would have had the ability to implement this alternative during the accounting period. Dr. Zech's opinions reveal only speculation that it might have been theoretically possible for Quanta to produce his non-infringing alternatives. *See id.* (stating that substitutes only theoretically possible will not suffice). The court, therefore, concludes that Quanta has not established that Dr. Zech's non-infringing alternatives were "available" to Quanta during the accounting period. Consequently, Dr. Zech's opinions are irrelevant and do not "assist the trier of fact to understand the evidence or to determine a fact at issue." FED. R. EVID. 702; *see also Daubert*, 509 U.S. at 591. As such, the court GRANTS Laser's motion to strike Dr. Zech's November 1, 2010 report in its entirety. The court also strikes any mention of the above-referenced non-infringing alternatives in Dr. Zech's November 15, 2010 rebuttal expert report.

## V. CONCLUSION

For the foregoing reasons, Laser's motion to exclude the expert reports and corresponding trial testimony of Dr. Zech is GRANTED-in-part and DENIED-in-part. The motion is GRANTED as to Dr. Zech's November 1, 2010 non-infringing alternatives report and any reference to those alternatives in Dr. Zech's November 15, 2010 rebuttal expert report. The motion, however, is DENIED as to the balance of Dr. Zech's November 15, 2010 expert report.

This order moots Laser's motion to exclude Dr. Zech's non-infringing alternatives report on the grounds that it provides an invalidity analysis and, as such, is beyond the scope of the new damages trial (Dkt. No. 649).

SIGNED this 20th day of January, 2011.

_____
CHARLES EVERINGHAM IV
UNITED STATES MAGISTRATE JUDGE